CHAD C. SPRAKER
Assistant U.S. Attorney
PAUL JOSEPH
Special Assistant U.S. Attorney
U.S. Attorney's Office
901 Front St., Suite 1100
Helena, MT 59626
Phone: (406) 457-5120
Fax:    (406) 457-5130
Email: chad.spraker@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

**FILED**

**DEC 12 2017**

Clerk, U.S. Courts
District Of Montana
Missoula Division

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| UNITED STATES OF AMERICA, | CR 14-27-BU-DLC |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| vs. | |
| KRISTJAN THORKELSON, | |
| Defendant. | |

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, represented by Chad C. Spraker, Assistant United States Attorney for the District of Montana, the defendant, Kristjan Thorkelson, and the defendant's attorneys, Thomas W. McNamara, John E. Smith, and William W. Mercer, have agreed upon the following:

1. **Scope:** This plea agreement is between the United States Attorney's Office for the District of Montana and the defendant. It does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority, or the United States Probation Office.

2. **Charges:** The defendant agrees to plead guilty to the superseding information, which charges the crime of Misprision of a Felony in violation of 18 U.S.C. § 4. This offense carries a maximum punishment of three years imprisonment, a $250,000 fine, one year supervised release, and a $100 special assessment. At the time of sentencing, if the Court accepts this plea agreement, the United States will move to dismiss the indictment and superseding indictment against all defendants.

3. **Nature of the Agreement:** The parties agree that this plea agreement shall be filed and become a part of the record in this case, and will be governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The defendant and the United States agree that a sentence of probation for 60 months with the first six months to be served under conditions of home detention, a $250,000 fine, and a $100 special assessment is an appropriate resolution of this case and results in the imposition of a reasonable sentence that is sufficient, but not greater than necessary, taking into consideration all of the factors set forth in 18 U.S.C. §§ 3553(a) and 3572.

| AUSA | DEF | ATTY | Date | |
|---|---|---|---|---|
| CCS | // | [signature] | 12-11-17 | Page 2 |

The defendant understands that if the Court agrees to be bound by the terms of plea agreement, and all counts of the indictment and superseding indictment are dismissed at the time of sentencing, he will not have an automatic right to withdraw his plea. Rule 11(d)(2)(A), *Federal Rules of Criminal Procedure*. If the Court rejects the agreement pursuant to Rule 11(c)(5), *Federal Rules of Criminal Procedure*, the defendant will be able to withdraw from the plea agreement, which will in that event become null and void.

Cessation of Sales to the United States:

(a) Within 90 days after sentencing pursuant to this plea agreement, the defendant shall cause the co-defendants, their subsidiaries, and other related entities—including but not limited to Thorkelson Consulting, Ltd.; 4208081 Canada Ltd.; and Global Drug Supply, Ltd.—to permanently cease any sales of unapproved, misbranded, adulterated or counterfeit drugs in the United States through the internet or otherwise.

(b) Within 90 days after sentencing pursuant to this plea agreement, the defendant agrees to assist in the surrender by co-defendants Canada Drugs Ltd., Rockley Ventures Ltd., and River East Ventures Ltd., all domain names, and any legal rights with respect to use of the domain names, to the United States that he and the co-defendants utilized in the sale or distribution of unapproved, misbranded, adulterated or counterfeit drugs in the United States, including but not

limited to www.canadadrugs.com, www.cheapodrugs.com, and www.jandrugs.com.

(c) The defendant agrees to provide any reasonable assistance necessary to effectuate the transfer of control of the domain names, including but not limited to contacting the domain registrar responsible for register of each of the domain names and authorizing transfer of the domain name to the United States. Further, the defendant shall assist in the transfer of the identified domains by delivery to the United States, upon the United States' request, of all necessary and appropriate documentation with respect to such domains, including consents to transfer, contracts with the registrar(s), proof of payment, and any and all other documents necessary to deliver good and marketable title to domains.

(d) The defendant agrees not to disclose, directly or indirectly, any customer information for individuals residing in the United States to any other pharmacy with a principal place of business or jurisdiction of entity formation outside the United States. The defendant further agrees not to sell any of its customer information to any third party.

Cooperation:

The defendant agrees to cooperate with the United States in the following ways:

(a) Use his best efforts to make available former owners, executives, independent contractors, and employees to provide information and/or testimony as requested by FDA's Office of Criminal Investigations or the U.S. Attorney's Office for the District of Montana, including sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement authorities.

(b) The defendant agrees to assist in the voluntary surrender of all information relating to the sale or distribution of unapproved, misbranded, adulterated, or counterfeit drugs in the United States, including but not limited to:

(1) All information relating to the sale or distribution of such drugs to physicians, physician offices, clinics or hospitals in the United States, including but not limited to:

(A) All emails relating to the sale or distribution of such drugs to such customers;

(B) All information relating to complaints, including but not limited to:

i. All information relating to the counterfeit Avastin distributed by the defendant, its subsidiaries, and other related entities;

CCS  DEF  ATTY  12-11-17    Page 5
AUSA

      ii. All information relating to the counterfeit Altuzan distributed by the defendant, its subsidiaries, and other related entities;

      iii. All information relating to any other complaints of suspect or counterfeit product;

      iv. All information relating to complaints about product temperature;

      v. All information relating to any other complaints about product quality.

(C) All invoices referencing sales to such customers;

(D) All financial records related to the sale or distribution of such drugs to such customers;

(E) All recorded telephone conversations with such customers;

(F) All marketing materials relating to sales efforts;

(G) All call notes, transcripts, logs or any other record maintained relating to the sale of such drugs to such customers;

(H) All information relating to the entities that were involved in the sale or distribution of such drugs to such customers, including but not limited to:

  i. Organization charts;

  ii. Employee rosters.

 (I) All information relating to drop-shippers, logistics providers, or common carriers utilized in the sale or distribution of such drugs to such customers, including but not limited to:

  i. All emails relating to such entities;

  ii. All shipping records relating to the distribution of such drugs to such customers.

 (J) All information relating to the sourcing of such drugs, including but not limited to:

  i. The name and address of all sources of such drugs;

  ii. All emails with suppliers;

  iii. All invoices reflecting the purchase of such drugs;

  iv. All information relating to due diligence performed on suppliers.

(2) All information relating to the sale or distribution of such drugs to any customer in the United States not encompassed in subsection (1), including but not limited to:

(A) All emails relating to the sale or distribution of such drugs to such customers;

(B) All information relating to complaints, including but not limited to product quality complaints;

(C) All invoices referencing sales to such customers;

(D) All financial records related to the sale or distribution of such drugs to such customers;

(E) All recorded telephone conversations with such customers;

(F) All marketing materials relating to sales efforts;

(G) All call notes, transcripts, logs or any other record/document maintained related to the sale of such drugs to such customers;

(H) All information relating to the entities that were involved in the sale or distribution of such drugs to such customers, including but not limited to:

    i. Organization charts;

    ii. Employee rosters.

(I) All information relating to drop-shippers, logistics providers, or common carriers utilized in the sale or

distribution of such drugs to such customers, including but not limited to:

    i. All emails relating to such entities;

    ii. All shipping records relating to the distribution of such drugs to such customers.

(J) All information relating to the sourcing of such drugs, including but not limited to:

    i. The name and address of all sources of such drugs;

    ii. All emails with suppliers;

    iii. All invoices reflecting the purchase of such drugs;

    iv. All information relating to due diligence performed on suppliers.

<u>Interdependence of Plea Agreements</u>

The defendant agrees that this agreement is contingent upon the Court's acceptance of the guilty plea of codefendants Canada Drugs, Ltd., Rockley Ventures, Ltd., and River East Supplies Ltd.

**4. Admission of Guilt:** The defendant will plead guilty because the defendant is guilty of the charge contained in the superseding information. In pleading guilty, the defendant acknowledges that:

<u>First</u>, a federal felony was committed as charged in the superseding information;

<u>Second</u>, the defendant had knowledge of the commission of that felony;

<u>Third</u>, the defendant had knowledge that the conduct was a federal felony;

<u>Fourth</u>, the defendant failed to notify the authorities as soon as possible; and

<u>Fifth</u>, the defendant did an affirmative act, as alleged, to conceal the crime.

**5. Waiver of Rights by Plea:**

(a) The defendant is entitled to have the charge outlined in paragraph 2, above, prosecuted by an indictment returned by a concurrence of 12 or more members of a legally constituted grand jury, consisting of not less than 16 and not more than 23 members.

(b) The government has a right to use against the defendant, in a prosecution for perjury or false statement, any statement given under oath during the plea colloquy.

(c) The defendant has the right to plead not guilty or to persist in a plea of not guilty.

(d) The defendant has the right to a jury trial unless, by written waiver, the defendant consents to a non-jury trial. The United States must also consent and the Court must approve a non-jury trial.

(e) The defendant has the right to be represented by counsel and, if necessary, have the Court appoint counsel at trial and at every other stage of these proceedings.

(f) If the trial is a jury trial, the jury would be composed of 12 laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict unless, after hearing all the evidence, it was persuaded of the defendant's guilt beyond a reasonable doubt.

(g) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

(h) At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence. If the witnesses for the defendant

would not appear voluntarily, their appearance could be mandated through the subpoena power of the Court.

(i) At a trial, there is a privilege against self-incrimination so that the defendant could decline to testify and no inference of guilt could be drawn from the refusal to testify. Or the defendant could exercise the choice to testify.

(j) If convicted, and within 14 days of the entry of the Judgment and Commitment, the defendant would have the right to appeal the conviction to the Ninth Circuit Court of Appeals for review to determine if any errors were made that would entitle the defendant to reversal of the conviction.

(k) If convicted in this matter, a defendant who is not a citizen of the United States may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

The defendant understands that by pleading guilty pursuant to this agreement, the defendant is waiving all of the rights set forth in this paragraph. The defendant's attorney has explained those rights and the consequences of waiving those rights.

**6. Stipulation as to Disposition:** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is as follows, and will result in imposition of a reasonable

sentence that is sufficient but not greater than necessary, taking into consideration all of the factors set forth in 18 U.S.C. §§ 3553(a) and 3572:

(a) A period of probation of 60 months, with a condition that the first six months be served under home detention;

(b) A total criminal fine in the amount of $250,000 U.S. funds to be paid by or on the date of sentencing in this matter; and

(c) A mandatory special assessment in the amount of $100 U.S. funds paid by or on the date of sentencing in this matter.

7. **Condition of Home Detention:** In order to enforce the condition of home detention as stated in paragraph 6, prior to sentencing, the defendant agrees to provide the name of a Canadian monitoring company that meets the approval of the Court and the United States Probation Office, and that can provide supervision during the term of home confinement and probation as required by the United States Probation Office. Defendant further agrees to pay, prior to sentencing, any and all costs associated with the supervision by the approved Canadian monitoring company as required by the United States Probation Office.

8. **Sentencing Guidelines:** The parties agree that the U.S. Sentencing Guidelines must be applied, and a calculation determined, as part of the protocol of sentencing to determine what sentence will be reasonable. In this case, the parties are submitting the plea agreement to the Court under Rule 11(c)(1)(C) and will ask

the Court to accept the terms of the plea agreement. If the Court rejects the joint sentencing recommendation contained in the plea agreement, the defendant will be able to withdraw from the plea agreement.

9. **Appeal Waiver:** The defendant understands that the law provides a right to appeal and collaterally attack the sentence imposed in this case. Based on the concessions made by the United States in this case, the defendant knowingly waives any right to appeal the judgment and sentence and any right to bring any other post-conviction attack on the judgment and sentence. The defendant specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking the sentence. This waiver does not prohibit the right to pursue or maintain such an action alleging ineffective assistance of counsel.

10. **Immigration Waiver:** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subjects of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of a conviction on a person's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

| CCS | /t | tw/JJS | 12-11-17 | |
|---|---|---|---|---|
| AUSA | DEF | ATTY | Date | Page 14 |

immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

11. **Voluntary Plea:** The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made to induce the defendant to plead guilty, and that this agreement is freely and voluntarily endorsed by the defendant.

12. **Request for Expedited Preparation of PSR Report before Acceptance of Plea:** The parties agree to jointly request that the Court order the Probation Office to prepare a pre-plea Presentence investigation report. If, after considering the parties' Rule 11(c)(1)(C) plea agreement and the Presentence investigation report, the Court concludes it will accept the plea agreement and sentence the defendant pursuant to the terms in this plea agreement, the parties will request a hearing date. At that time, the defendant, a Canadian citizen residing in Winnipeg, will waive his extradition rights and appear before the Court. At that time, he will waive indictment, plead guilty, and be sentenced in the same hearing.

The defendant further acknowledges that that Federal Rule of Criminal Procedure 32(e)(1) precludes the probation officer from submitting the presentence report to the Court or disclosing its contents to anyone until defendant has pleaded guilty. The defendant consents to the submission of the presentence report to the Court for its review prior to the entry of his plea. The defendant further consents to

the disclosure of the presentence report to the United States by the probation officer.

13. **Disclosure of Financial Information:** The defendant authorizes the U.S. Probation Office to release to the Financial Litigation Unit of the U.S. Attorney's Office all documents and financial information provided by the defendant to the U.S. Probation Office and any information obtained by the U.S. Probation Office about the defendant through its investigation. The defendant further agrees to fully complete a financial statement in the form prescribed by the U.S. Attorney's Office, provide financial documents as requested, and submit to a debtor's exam if deemed appropriate by the U.S. Attorney's Office, in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant consents to being immediately placed in the Treasury Offset Program to help meet the defendant's obligation to pay restitution and/or a fine.

14. **Breach and Waiver of Extradition:** If the defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the U.S. Attorney's Office is relieved of its obligations under this agreement, but the defendant may not withdraw the guilty plea. Additionally, if the defendant breaches the terms of this agreement or commits any new criminal offenses during the period of probation, the defendant will voluntarily waive and forego all and any of his rights under the Canada

| CCS | | | 12-11-17 | |
|---|---|---|---|---|
| AUSA | DEF | ATTY | Date | Page 16 |

Extradition Act and will voluntarily waive any objection to extradition from Canada and consents to return to the United States of America to be dealt with according to law, without formal extradition or proceedings of whatever kind being taken under the Canada Extradition Act or otherwise.

15. **Entire Agreement:** Any statements or representations made by the United States, the defendant, or defense counsel prior to the full execution of this plea agreement are superseded by this plea agreement. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. This plea agreement constitutes the entire agreement between the parties. Any term or condition which is not expressly stated as part of this plea agreement is not to be considered part of the agreement.

KURT G. ALME
United States Attorney

*[signature]*

Chad C. Spraker
Assistant U. S. Attorney
Date: 12-11-17

*[signature]*

Kristjan Thorkelson
Defendant
Date: 11/29/17

_____
Thomas W. McNamara
Defense Counsel
Date: 11/28/17

_____
John E. Smith
Defense Counsel
Date: 12.6.17

_____
William W. Mercer
Defense Counsel
Date: 12/7/17